I just don't know if there's anybody under 50 that's young. I'd like to discuss four key issues today. The first is with respect to jurisdiction. We have four issues that have been challenged on appeal. The first issue relates to the court's ruling on a fraud matter. This is fraudulent inducement of the settlement agreement of the underlying case. And as the court well knows, in Texas, the federal courts have limited jurisdiction. District courts have limited jurisdiction, and that limited jurisdiction in this case was limited to the enforcement of the underlying settlement agreement. Here, the district court allowed the economy, the defendant, to amend its pleading to add a fraud claim, a fraudulent inducement claim, which ultimately the court granted. There's something that doesn't sit quite right, though, logically, with saying that the district court can enforce the agreement, but not entertain arguments regarding whether that agreement that it's being asked to enforce was procured by fraud. In this particular case, Judge Smith, the agreement provided what was to happen if there was a breach of the settlement agreement, or if something was wrong with the settlement agreement, and that was that the additional monies were not to be paid. And so, with respect to the breach of contract claim, that's ultimately what happened, is that the additional, back up, there was an $80 million settlement. Originally, this was a $230 million case that my client brought. It was settled for $80 million. The way that that was supposed to work is that there was a payment schedule, essentially $40 million at the front end and $40 million at the back end, and the way this was to work is that the parties agreed, Vicus agreed, that it would pay its suppliers. So the product here is guar and guar gum, and so the settlement provided for my client Vicus to receive $80 million, and some of that money would have to be paid to the suppliers. The allegation in this case is that one of the farmers was not paid, and so one of the farmers intervened in the case after the settlement agreement was inked and said, look, we have not been paid. Of course, the economy came in and said, well, if that's the case, then Vicus, you did not satisfy your obligations under the settlement agreement, and therefore, we have no obligation to continue paying. Now, interestingly, the only person who ever said that Vicus breached the settlement agreement by failing to pay the suppliers was a guy named Manoj Gupta. Manoj Gupta and his company, NM, tried to intervene in the case, and Judge Hughes made the decision that that party was not a proper party, dismissed them. NM then files in state court, and there was lots of discovery, and importantly, and it relates to the motion for summary judgment that I'll discuss later, importantly, the contract, we have not received payment, later says in the state court, oh, we have received payment. And the reason why he says that is because we deposed his CPA, and his CPA comes in and says, well, look, we've looked over the books and records, and it appears that Vicus fully paid to NM, the intervener in the federal case, fully paid. And so, therefore, there was no breach of the settlement agreement, the underlying settlement agreement, and that information, by the way, NM was sanctioned in the state court for bringing the suit improperly, abusing the process, and that information was then provided to fraud, this fraudulent intent to enter into the settlement agreement was based on Manoj Gupta's affidavit that says we didn't get paid. And so, ultimately, it turns out that Manoj Gupta was either lying before or is lying now. But, of course, when we get to the fraud motion for summary judgment, and you talk about intent, and you talk about fraud, you don't see very many fraud motions for summary judgment. And the reason is because intent is an incredibly fact-intensive inquiry, and here, the basis upon which the summary judgment is granted is this idea that my client entered into a settlement agreement with the economy to take a significant haircut, the 230 to the 80 million, to enter into the settlement agreement with the fraudulent intent of getting paid lots less money, and then enters into the settlement agreement with one of the suppliers, and the supplier ultimately says, no, we were paid in full. And so, with respect to the jurisdictional issue, we believe that the two rulings by the district court on not only the motion for summary judgment for fraud was inappropriate for the district court to handle because it did not have subject matter jurisdiction, and there's a related issue, and that is with respect to interest on the fraud ruling as well. Well, if we were to decide in your favor, obviously, we don't have to discuss that and make a decision, but if we were to decide in your favor, what is it? Just give us the bullet points of what you would have us tell Judge Hughes about what needs to be done. Well, Judge, I think that . . . Give us a summary, not a speech. Limited to the fraud issue, Your Honor? Whatever it is that you say you brought here on the field and you're asking us to . . . So, I think the . . . Thank you, Judge. I think that the fraud issue gets reversed. I think that with respect to the Judge earlier, Judge Hughes earlier issued death penalty sanctions, and we believe that the death penalty sanctions are improper as well. I believe that the court, if you rule in my favor or my client's favor, should remand for further proceeding with respect to the breach of contract issue and enforcement of the settlement agreement that Judge Hughes does, in fact, have jurisdiction over. So, and then with regard to the interest, Your Honor, we believe that the interest was improperly calculated. We believe that that should also be reversed, remanded for further consideration, of course, contingent upon a proper ruling that the settlement agreement was, in fact, breached. Because, as the court knows from the record, we also brought a motion to enforce the settlement agreement for payment of the additional $40 million. So, there were, you know, cross-claims relative to the enforcement of that settlement agreement. So, those are the three issues, the three bullet point issues that we're asking for. Let me just touch on the fraud or the abuse of discretion related to the death penalty sanctions. And so, Judge Hughes granted death penalty sanctions in this case, and we believe that that was improper for several reasons. Number one, when you look at what the judge considered for death penalty sanctions against the cause, the judge puts it in his order, and that is recalcitrance, switching counsel, breaching the settlement agreements, misleading or fabricated discovery disclosures related to these tables of losing a hard drive and failure to appear at a status conference. Most of those are not improper at all. Switching counsel, the judge allowed that. There's not an issue with switching counsel. Well, losing the drive or the computer or whatever, stating an oscillation doesn't say much. But when you add to that that the judge had evidence that there was no such agreement, and that the document that had been produced was a matter of fraud, and then he ordered to produce the computer that produced that. And then, now that computer being an awfully important piece of evidence, to say the least, we get the story coming back to the judge. And the, well, somebody was bringing it back but got off a train and left it inadvertently. Now, one way to look at that is, do I take that story back to the judge? Or do I live with the consequences of what was in that computer? It's just, looking at it from the judge's perspective, can you offer an explanation for that? I mean, it's not just to bring you this piece of evidence. It is this critical piece of evidence, and he's accusing people of fraud, and they zero right in on the fact that the true document is on that computer. And then suddenly, it gets lost in a way that's extraordinary. I mean, you don't hand that piece of gold, a valuable thing, to somebody that casually leaves it on a train. Now, that's from his perspective. And so let me address that, too. Would you please clarify that a little bit? Sure. Blow all that smoke away from it. Sure. Let me address it in two ways. The first is that in the coastal decision decided by this court in 2020 with respect to discovery issues under 47, it says that there needs to be three issues that are identified or at least discussed. Number one, there's an obligation to preserve. There's no doubt that Vikas had an obligation to preserve that hard drive and that the courier, when he was on the train and stepped off the train, that he was negligent in stepping off the train and leaving that hard drive. This is in a remote part of India. It was a midnight train. He was one of few people on the train. What was the courier? This was somebody who worked for Vikas. So an employee. He was an employee. It wasn't an outside delivery service. That's exactly right. So he never left your possession except by inadvertence. No doubt. And was he negligent? And does the economy say he was negligent in stepping off the train? There's no doubt. The other two issues is that you destroyed that evidence with a culpable mind. There is no evidence here that has been presented that shows that Vikas destroyed the evidence with a culpable mind. Now, even the other side, even the economy agrees and their corporate representative testified that he negligently got off the train. No doubt. Now, he immediately, in Bathinda, in the small town in India, Why couldn't they download the contents and send those electronically? No doubt they should have, Judge. No doubt that they should have downloaded the contents of this computer, copied it, made some other record. They absolutely should have done that. There's no explanation for that. But the third element is the most important. And that is, the evidence was relevant. And here it's not for two reasons. Number one, what was on the computer? There's no doubt that what was on that computer was the settlement or not. But if it was there, then the economy's argument is that the agreement proves that my client didn't pay the supplier in cash in full. And so whether the agreement exists or whether it doesn't exist in this current state doesn't matter one bit. Because even to their argument, all this settlement agreement proves is that there was an agreement to settle with NM that wasn't sufficient, according to them, under the settlement agreement. Number two, the same man who signed the settlement agreement is the guy who came into Judge Hughes' court and said, they didn't pay us, so therefore there's a violation of the settlement agreement, and then comes in, recants his story, and says, the reason why I told Judge Hughes that was because I wanted to seek a better deal with Dukas. And then his CPA comes in and says, I've looked at all the records, and the records absolutely show that Dukas is paid. And so for the last prong, does it matter what was on that computer? It doesn't, because it wouldn't sway the decision either way. Finally, with respect to the last 35 seconds I have, with respect to the interest, interest here should be pegged at .15 as opposed to .5. And the date is most important. The date should be started at the time that they allege their project. Let me ask you a question about the withdrawal of counsel. There was a reference to that. What was the basis of that? I'm sorry, I didn't hear you. It's a withdrawal of counsel that Judge Hughes pointed to. It troubled him. I don't know what Judge Hughes, I mean, Beck Redden represented Dukas, and honestly, I think it was that Dukas didn't pay, or there was a payment dispute, and so they decided to step away. But Beck Redden had represented Dukas for several years, and I think that there was a payment issue. Okay. Thank you. Thank you, Your Honor. Will you say time for rebuttal, Mr. Hogan? I may have pleased the court. The district court's rulings afforded economy two broad categories of relief. The first category of relief is on the $40 million in future payments owed by economy to the cops. The ruling that Judge Hughes made on that aspect of the relief is supported by the breach of contract findings, by our claim to enforce the agreement's conditions, and by the sanctions order as an alternative to the interpretation of the agreement. The second broad category of relief is the category of relief that awarded by the district court that ordered return of the $40 million that we had already paid, and not the $40 million that we owed in the future. That finding, that ruling, that order by Judge Hughes can be supported by two independent alternative orders. The first is the breach of contract by the cops, and the second is the fraudulent inducement finding. I understand that there are several overlapping and intertwined pieces to the rulings in the district court. I want to focus on the breach of contract, on the enforcement and interpretation of this settlement agreement, and its expressed terms. I also hope to address questions on the sanctions order and the fraud and inducement claims, but let me tell you that if the court did not agree with us on the sanctions, if the court did not agree with us on the fraudulent inducement, the court should still affirm the findings because the breach of contract and the essential terms of the contract, as construed by the district court, was a correct ruling. Let's look at that. The contract findings, the enforcement of the settlement agreement. Now, because it admits that Judge Hughes made a ruling on the breach of contract, that's in their reply brief at page 5 where they say that the court had ruled earlier that because had breached the settlement. That's found in two places. There's an order on the intervention by these suppliers. He ruled on the breach of contract in that circumstance. He also ruled on the breach of contract when he got around to writing his order on the summary judgment ruling. Those summary judgment rulings and the breach of contract rulings are found in the record first at page 3722 of the record on appeal where the district judge said that the remaining issues that he was going to address are economy's breach of contract claim against because and he describes those breaches. He says there are many breaches of the contract of its essential terms. Later, the court recited the rulings and noting that in the summary judgment on fraud, he describes again the breaches that the cost was engaged in and he says that we stopped paying, economy stopped paying when it was told that the cost had not paid the suppliers materially breaching its obligations and that's in the record at page 5130. Judge Hughes then gives a long list of breaches which we construe to be findings of fact which this court defers to him in the context of an enforcement action. In an ancillary retained jurisdiction over enforcement this court has always said that it will not reverse those kinds of fact findings unless they are clearly erroneous and there are six of them in total finding breaches of contract and the court to reverse we would submit is required to go through each of those six and describe why in fact they are clearly erroneous and they are not. They are very detailed. They are supported by the record and this court reviews the entire record and makes its own independent judgment deferring to the district court as to whether those are clearly erroneous findings. Now that's the breach of contract situation that was brought to this court on appeal. Those interpretations of the contract terms were correct. First, because his promises weren't kept and so the settlement agreement was breached paragraph 2.7E of the settlement agreement which is in our record excerpts your honors at item tab number two in paragraph 2.7E the contract says that the suppliers of GWAR were to be paid in full. Now the cost wanted that paid in full language to be construed as the equivalent of language of paid in kind because it sent suppliers GWAR shipments and said well yeah we didn't pay you in cash but we gave you back the agreement and Judge Hughes in construing the contract determined as a matter of law that that's not what the contract meant. There's no finding of ambiguity. There's no showing of ambiguity by the cost and in this schedule that was produced under the agreement to us which is at the record at page 59 36 every single supplier is a related entity to the cost except for the final two. Those final two suppliers NMAgro Foods and Ruchi Soya Foods those two suppliers filed affidavits they tried to intervene in this case in federal court in an enforcement action got kicked out but nevertheless they filed affidavits saying they had not been paid. The schedule shows undisputedly there was not full payment because there's a description in here that there was 287.40 crore which is an Indian term for 10 million rupees per crore that there was a deficit in the payment of that and that's what their own schedule shows so there clearly was not payment in full under the terms of the contract. Well what happens? The contract's very clear by its own terms that in paragraph 2.7k there are categories of information that's supposed to be delivered to us about amounts, modifications of the contracts, when the payments were made, all of that documentation was supposed to have been supplied to us. There were supposed to be information and written discharge agreements on a seed distribution program that were never provided to economy. There were supposed to have been those discharge agreements and other documents from the suppliers. There were supposed to have been dismissals of criminal actions brought against my client in India, threats of kidnapping, threats of arson, threats of property damage that they were supposed to cease and desist from, and the agreement was supposed to have been kept confidential. Undisputedly, the confidential settlement agreement was given to the suppliers in Andhra Pradesh in violation of the terms of the settlement. The cancellation of all the past purchase orders of economies that sent to the cost were supposed to have been forgiven. All of our payments, every single payment, all $80 million paid in settlement, were under the terms of the agreement, by its expressed terms, contingent on performance by the cost of all, quote, terms, conditions, covenants, and warranties in the agreement. That's at record page 4860. It's paragraph 2.7M, and that's the basis on which Judge Hughes found, at least in part, that there had been a failure of consideration, a failure of covenants, a failure of warranties under the agreement. And the agreement says, quote, payments to be made, referring to paragraph 2.7A through C, the payments to be made are contingent upon future compliance by the cost. Now this settlement was entered into on November 20th. It was formalized in a final signing on December the 20th. But the future payments started happening after November 20th. And so all of the payments, all of the $40 million that we paid to them were excused and should have been returned to us simply on the breach of contract findings alone. And this court confirmed, looking no further than as to whether Judge Hughes was correct in his construction of the contract and the facts that are not clearly erroneous that support that finding. Turning to the fraud question, Judge Hughes, after we had answered the motion to enforce that was filed against us by because, Judge Hughes allowed us to amend and to state a claim for fraud and inducement. It's not appreciably different to fraud and inducement as opposed to the contract breach, except as to one critical issue and that is the intent that the cost we showed did not have to perform its agreement. And so as a breach of contract, you don't look at intent, you don't look at fraud, you just find out was the contract performed or wasn't it performed. If it wasn't performed, it's a breach of contract. If you then go further and say, well, the contract wasn't performed because the cost never intended to perform the contract and it induced us to enter into that settlement agreement by fraudulent intent, then it's a fraud and inducement claim, which is intertwined with and related to all of the claims on enforcement. And this court's been very clear. You had the burden on the fraud. Yes, Your Honor. But the district court didn't really impose that burden on you. It made all the inferences in your favor. Well, this court has said that in the unique circumstance of a district judge is the fact finder. There's not an entitlement to a jury on those issues, which is the corrugated container case that this court decided in 1985. And in the Wise v. Wilkie case, which this court decided just last year in 2020, the court has decided that on fact questions including things like an essential term of a contract or a covenant that's not met, that this court said that the district judge is entitled to decide those sorts of fact questions and that this court would defer to fact findings that adhere in the nature of an enforcement action. Fraud in the inducement, Judge Smith, is no different than the mutual mistake that was wrestled with in the Wise v. Wilkie case. Mutual mistake, fraud in the inducement all turn to whether the contract was performed and why it wasn't performed. Now, putting aside for the moment that we have breach of contract findings that would support the judgment on their own, the fraud in the inducement is simply an extension of the facts and the circumstances that prove why the contract was breached. And Judge Hughes didn't infer things in our favor. He simply ruled as a matter of law that when you go into a settlement negotiation, as Mr. Aggarwal for Becas did, never intending to make the payments to the suppliers, going to them and urging them to take haircuts on their payments, then you have no intent to perform the contract. And the fraud he induced is to pay that $40 million without any intent to perform the obligations that Becas had. And those obligations in terms of the fraud or the contract, as I said, are overlapping. And the nonperformance is the key. And there was nonperformance whether you call it fraud in the inducement or whether you call it a breach of contract. There's nonperformance of the obligations. The conditions that are specified in the contract didn't happen. They did not occur and therefore our payments are excused. We get back the money that we paid under the terms of the contract itself. So the fraud findings simply explain why the contract breach happened, we believe. But you can't on November 20th sign an agreement and say you're going to pay suppliers, sign an agreement and say you're going to keep things confidential, when you then within a month turn the agreement that's confidential over to the suppliers, bully them into taking a haircut on the settlement payments, which denied us the benefit of our bargain, which was that we would have reliable suppliers in Guar to us. If you're beating them up and bullying them and cowering them into taking less than full payment, which is what the contract says they were entitled to, then our supply chains are threatened. Our relationships in terms of business associates in India are threatened. And we bargained for this huge settlement payment on Guar shipments that we believe were adulterated and off spec because we wanted to ensure that our suppliers would continue to supply Guar to us so that we could put it into our drilling mud, sell it to Halliburton and Schlumberger and other companies to raise the viscosity of their drilling fluids for hydraulic fracturing operations. Let me turn briefly in just a few moments. I hope to get some time back to the court. Let me turn to the sanctions issue and to jurisdiction. As the U.S. Supreme Court said in the Chambers case, this is another example of a dispute that started with a breach of contract but it did not remain so. As Judge Higginbotham has noted, the conduct was untoward in this case. This supposed agreement between DCOS and its suppliers that it says that it agreed to only came up after we challenged DCOS to prove to us that they had paid the suppliers because some of those suppliers had come to my colleague and told him that they weren't getting paid. This agreement is then revealed in July when it was supposed to have been revealed to us in December. Judge Hughes said, well, you know, go do some kicking around with the tires, try to figure out what's going on here. It turns out Mr. Agarwal was deposed. In his deposition, he said that he had decided in November and December not to pay in full in cash but to pay in kind and that he had drafted this settlement agreement on a computer. Judge Hughes ordered the production of that computer. It was the essential evidence that we could find if we looked at the electronic data on that computer as to when this supposed agreement was drafted. Was it drafted in December such that he never intended to pay anybody and Mr. Agarwal's computer reveals that he started in December? Or was it drafted in June or July of the following year when we challenged him on why he wasn't paying in full the suppliers? You could find that data out from the hard drive. Why isn't paid in full just simply paying what's owed? It's a term of construction of the contract, Your Honor. If paid in full is equated to payment in kind. If they're going to give back some of the materials thereby reducing their obligation and then paying the cash for the rest, why is that not payment in full? It's not payment in full because it's not simply the term of the contract doesn't say satisfy the suppliers on what their GWAR shipment amounts were. It doesn't reduce to a simple accounting equation of the deals for $10 million of GWAR to be shipped. We gave you $8 million in cash and $2 million worth of GWAR supplies. First of all, Mr. Gupta filed an affidavit that said he didn't get paid in full. Our forensic accounting expert, Mr. Arney, testified that based on his review of the documents that there was not payment in full or payment in kind. And it's not a well it's good enough, close enough, the in kind payment takes care of it. That's not what the contract says. The contract says payment in full. We're giving you $40 million to pay the suppliers, pay them in full, and then we're going to go to the suppliers and beat them up and say you got to take less because we took less. That reduces them to an antagonistic position. We got sued in federal court by interveners. We got sued then in state court when the intervention was struck. That's the antithesis of what we economy bargained for to get out of this settlement, which was happy suppliers who would do business with us again who were paid in full. The contract doesn't say paid in full or paid in kind. It doesn't say paid in full to the satisfaction of the suppliers. And it takes the issue out of contention of fact as to whether some quantity of guar was actually shipped. And you get out of the situation that Judge Hughes was confronted with, which was he's got all these overlapping and difficult triplicate carbon copy bills of lading and all kinds of documents that don't make sense and don't add up, that are contradictory, that are some of them forged and some of them on computer printout paper, when the person who's the supplier says that it's only records that it kept in the ordinary course of its business were triplicate carbon copies in handwriting. So he simply said that that was enough. When there's no original of this supposed agreement that suppliers were paid off in guar, there's no original of that agreement. Mr. Agarwal doesn't have an original. The computer that it was drafted on is gone missing while somebody gets off a train during civil unrest and rioting in India, goes inside to get a cup of tea, and leaves his court-ordered-to-be-produced computer on the train. So Judge Hughes' sanctions order is defensible. This court has said in a couple of cases, including the Zimmerman v. City of Austin case in 2020, Judge Hogue on the panel in that case, that when the natural extension of the court's inherent authority over its orders and enforcement of its decrees extends to collateral issues like sanctions. The court had jurisdiction on the sanctions. It had jurisdiction to consider the defense of fraud and the inducement, just like the court said. The mutual mistake issue had jurisdiction to be decided in the Wise v. Wilkie case. There's jurisdiction that Judge Hughes acted on correctly. His breach of contract findings, standing alone, entitled us to the relief that he was correct to give. And the sanctions and fraud issue will lead to the briefs on the issue of the interest. All right. Thank you, Mr. Hogan. Mr. Ellis, you've saved some time for rebuttal. A couple points that I wanted to address. The first is with respect to the summary judgment that is at issue in this case is limited to the fraud. And in fact, it's at 51-28. If you read the summary judgment that was signed by Judge Hughes, the opinion on summary judgment, it's limited to the fraud claim. Now, you heard opposing counsel make the argument that the fraud and the breach of contract are kind of the same. They're not with respect to what Judge Hughes signed this summary judgment on and what he granted the money, the $40 million in this case on. That's limited to the fraud. And let me just point out two areas which make it very clear what Judge Hughes was doing with respect to the final issue that remained in the case, which was the fraud. He says, economy's fraud claim against Vikas is all that remains. And then under the fraud section, he outlines the promises which is, what he's saying is that the promises that were broken in his mind that satisfied the intent element and showed that Vikas intended not to perform this agreement. This is not a summary judgment on fraud. The economy never moved for summary judgment on breach of contract. In fact, the economy, the summary judgment of the breach of contract issue was decided at the time that the interveners were let out of the case. So this summary judgment, and I don't want there to be any confusion, this summary judgment is limited to what Judge Hughes found with respect to the fraud claim. And why is that important? It's important because fraud claims, as I mentioned earlier, are so fact-intensive. And I don't remember which justice mentioned that essentially what you have here is Judge Hughes taking evidence in that wasn't really evidence. It was mere argument of counsel and then taking the next step and saying, yeah, I'm just going to find that they committed fraud without any process. It's literally, and just a couple examples that was mentioned by opposing counsel, and that is that Picasso turned the settlement agreement over to the suppliers. Well, where is that in the record? And who said it? That's the lawyer saying it. There's no evidence on this. And so that's part of the issue is that Judge Hughes was taking these inferences that the losing side economy had the burden of proof on, and he essentially creates a judgment, a summary judgment on fraud related to these issues. And I wanted to point out the remedy in the summary judgment. This is at the record 5133. The remedy, as Judge Hughes writes it, is for fraudulently inducing economy into this settlement agreement. The cost must restore economy to its position before the agreement. The cost must return the $40 million that economy paid under the agreement with interest and must pay for economy's cost in this case. Again, all on the basis of fraud. And the issue related to the compute, I talked about it a little bit in my opening, and the issue related to the computer certainly was of concern to Judge Hughes. But when you factor in that the person who raised the issue of nonpayment at the beginning was NM, Mr. Gupta at NM, who later comes and testifies that I messed up, I looked at the books, my accountant looked at the books, and he was based on an accounting issue related to the fiscal year end. Some of the money that Picasso paid didn't get paid until— got paid on the prior year. And so he explains it, his accountant explains it, and that information was submitted to the court. And let me end by talking about payment in kind or in cash. Payment— if I sell my bike and somebody decides that they're going to pay me in candy and in dollars, they paid me. There's nowhere in the contract where it says it must be paid in cash. And we just don't have that. And that was written in. Thank you. Thank you, Mr. Ellis. Your case and all of those cases are under submission.